UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILFRED JONES                                              CIVIL ACTION

VERSUS                                                     NO. 17-2376

UNITED STATES OF AMERICA                                   SECTION "R" (3)


**ORDER AND REASONS**

Before the Court is defendant United States of America's motion for summary judgment. For the following reasons, the motion is granted.


**I.   BACKGROUND**

This Jones Act case arises out of an alleged slip-and-fall aboard the M/V CAPE KNOX, a vessel owned by the United States.[1] Plaintiff Wilfred Jones signed on as an engineer with the M/V CAPE KNOX on January 7, 2013.[2] During the evening of May 4, 2015, plaintiff was conducting rounds as duty officer.[3] After traversing an exterior deck, which had a nonskid surface, plaintiff entered the emergency diesel generator room.[4] The room

---

[1]   R. Doc. 1 at 2 ¶¶ V, VII.
[2]   R. Doc. 21-2 at 1; R. Doc. 25-8 at 1.
[3]   R. Doc. 21-2 at 1-2; R. Doc. 25-8 at 1.
[4]   R. Doc. 21-2 at 2-3; R. Doc. 25-8 at 1-2.

1

is separated from the deck by a hatch atop a nine-inch threshold.[5] The deck area immediately outside the emergency diesel generator room is illuminated by fluorescent lights.[6] Plaintiff asserts that, as he stepped into the emergency diesel generator room with his left foot, his right foot slipped, causing him to fall into some carbon dioxide containers.[7] Plaintiff testified during his deposition that he did not look down at the deck to see what caused him to slip, despite always carrying a flashlight when conducting rounds.[8] Nor did he notice anything out of the ordinary that evening.[9]

When plaintiff reported his injury the next day, he stated that he "lost balance and fell," but did not attribute his loss of balance to any particular cause.[10] Plaintiff later concluded that he slipped on grease that his shoe had picked up from the exterior deck.[11] According to plaintiff, grease fell from large winch cables that hung over the exterior decks, and as a result, "there was always grease on those decks."[12] Two other witnesses, marine surveyor John Pope and Christopher Keefe, an engineer aboard the M/V CAPE KNOX,

---

[5] R. Doc. 21-7 at 5.
[6] R. Doc. 25-1 at 8.
[7] R. Doc. 25-8 at 2; R. Doc. 21-4 at 11-12; R. Doc. 25-1 at 6.
[8] R. Doc. 21-4 at 20; R. Doc. 25-1 at 8.
[9] R. Doc. 21-4 at 25.
[10] R. Doc. 21-3 at 1.
[11] R. Doc. 25-1 at 7, 10, 13.
[12] *Id.* at 7.

confirmed that grease falls off the cables, although they stated the grease is rubbery, not slick.[13] Pope also stated that the deck area immediately outside the emergency diesel generator room is covered by an overhang, making it impossible for grease from the winch cables to fall directly onto the floor right outside the room.[14]

Plaintiff allegedly sustained injuries to his right arm and his back because of his accident.[15] He received treatment for pain and limited motion in his right arm,[16] and Keystone paid maintenance and cure related to these conditions until April 2016.[17] Plaintiff has also received treatment for lower back pain since the accident, including physical therapy and pain medication.[18] More recently, plaintiff's neurosurgeon, Dr. Rand Voorhies, has recommended a lumbar fusion procedure.[19] Although plaintiff experienced lower back pain for about ten years before the accident, he asserts that the accident exacerbated the pain.[20] Neither Keystone nor the United States has paid maintenance and cure related to plaintiff's back pain,

---

[13] R. Doc. 21-6 at 7; R. Doc. 21-7 at 2.
[14] R. Doc. 21-6 at 6-7.
[15] R. Doc. 1 at 2 ¶ VII.
[16] *See* R. Doc. 25-3.
[17] R. Doc. 21-5.
[18] *See* R. Doc. 25-7 at 2-3.
[19] R. Doc. 25-4 at 2.
[20] R. Doc. 25-1 at 12; R. Doc. 28-4 at 2.

and the United States does not intend to pay for plaintiff's lumbar fusion procedure.[21]

Plaintiff filed suit on March 22, 2017, against the United States and Keystone Shipping Services, Inc. Keystone, as agent of the United States, operated the M/V CAPE KNOX and employed plaintiff.[22] Plaintiff's complaint seeks damages for maritime negligence and unseaworthiness, as well as maintenance and cure.[23] The Court dismissed Keystone Shipping Services because of the exclusivity provision of the Suits in Admiralty Act, 46 U.S.C. § 30904.[24] A nonjury trial is scheduled to begin on June 11, 2018. The United States now moves for summary judgment.[25]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material

---

[21] *See* R. Doc. 28 at 3-5.
[22] *Id.* ¶ VI; R. Doc. 11-3 at 1.
[23] R. Doc. 1 at 3 ¶ IX, 4 ¶ XII.
[24] R. Doc. 12.
[25] R. Doc. 21.

4

fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

5

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

In a nonjury case, "a district court has somewhat greater discretion to consider what weight it will accord the evidence." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (quoting *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991)). "When deciding a motion for summary judgment prior to a bench trial," therefore, "the district court 'has the limited discretion to decide that the same evidence, presented to him or

her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* (quoting *In re Placid Oil*, 932 F.2d at 398).

## III. DISCUSSION

### A. Jones Act Negligence

Plaintiff asserts a maritime negligence claim against the United States under the Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq.* Such a claim by a seaman is analyzed under the Jones Act standard.[26] *See* Robert Force & Martin J. Norris, 2 *The Law of Seamen* § 30:94 (5th ed. 2017). The Jones Act affords a remedy to a "seaman injured in the course of employment." 46 U.S.C. § 30104; *see also Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995). "A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). A seaman's burden to prove causation between his employer's negligence and his injury is "very light." *O'Neill v. Seariver Mar., Inc.*, 246 F. App'x 278, 280 (5th Cir. 2007) (quoting *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 527, 548 (5th Cir. 1987)). But the Jones Act does not impose upon "employers a higher

---

[26] The parties agree that plaintiff was a seaman within the meaning of the Jones Act. R. Doc. 21-1 at 3; R. Doc. 25 at 11.

duty of care than that required under ordinary negligence"; the standard of care is that of a reasonable person under the circumstances. *Gautreaux*, 107 F.3d at 339.

Plaintiff's negligence claim is based on the United States' purported failure to provide a reasonably safe place to work. Specifically, plaintiff asserts that the presence of grease on the exterior decks of the M/V CAPE KNOX created an unsafe condition despite the nonskid surface.[27] It is clear that a Jones Act employer may be held liable if a seaman falls on a surface he describes as slippery. In *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir. 1989), for example, the Fifth Circuit upheld a jury verdict finding negligence where the plaintiff allegedly slipped and fell on a slippery barge deck. "While there was conflicting testimony as to whether the presence of grain dust and dew on the barge deck caused a dangerous condition," the Fifth Circuit noted that "the jury could have credited [the plaintiff's] testimony that the deck was 'slippery as ice.'" *Id.* at 374.

The United States argues that there is no evidence showing that the presence of grease on the decks created an unsafe condition or actually caused the accident.[28] Even in a Jones Act case, "there must be some

---

[27] R. Doc. 25 at 10.
[28] R. Doc. 21-1 at 4.

evidence from which a jury can infer that the unsafe condition existed and that the owner either knew or, in the exercise of due care, should have known of it." *Perry v. Morgan Guar. Tr. Co. of N.Y.*, 528 F.2d 1378, 1379 (5th Cir. 1976). And there must be some evidence of causation, even if it is entirely circumstantial. *See Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 508 (1957); *Pioneer Nat. Res. USA, Inc. v. Diamond Offshore Co.*, 638 F. Supp. 2d 665, 689 (E.D. La. 2009).

Plaintiff's deposition testimony provides evidence of the presence of grease on the exterior decks of the M/V CAPE KNOX. Plaintiff testified that "there was always grease present" on these decks.[29] According to plaintiff, cables hanging over these decks were "greased regularly, and grease would slough off of these cables."[30] Plaintiff also testified that "it doesn't take a lot of grease to precipitate a slip."[31] He referred to one earlier incident involving grease, when he "came very close to being jettisoned down [a] ladder" after grabbing a "blob of grease that had [fallen] off the cables."[32] After this incident, plaintiff purportedly raised concerns about the grease at a safety meeting.[33] Two other witnesses, marine surveyor John Pope and

---

[29] R. Doc. 25-1 at 7.
[30] *Id.*
[31] *Id.* at 10.
[32] *Id.* at 14.
[33] *Id.* at 7.

9

Christopher Keefe, an engineer aboard the M/V CAPE KNOX, confirmed that grease falls off the cables, although they stated the grease is rubbery, not slick.[34] Additionally, Pope stated that while the deck area near the emergency diesel generator room was free of grease and oil, he noted "some stains . . . on the deck."[35]

Although there is evidence of the presence of grease on the decks, there is no evidence that the grease created an unsafe condition in the area where plaintiff slipped, or actually caused him to slip. The area immediately outside the emergency diesel generator room has a nonskid surface. It is also covered by an overhang, meaning that grease could not have fallen directly from the winch cables onto the floor outside the room. Plaintiff did not testify that he observed any grease, either on the decks or on his shoes, at the time of the accident. *Cf. Colburn*, 883 F.2d at 374. Indeed, plaintiff's injury report filed the next day simply states that he "lost balance and fell," and does not attribute his loss of balance to any particular cause.[36] Plaintiff was clearly able to investigate why he slipped: the deck area outside the emergency diesel generator room was illuminated, and plaintiff had a flashlight. He could have examined the deck, and he could have looked at his shoes.

---

[34] R. Doc. 21-6 at 7; R. Doc. 21-7 at 2.
[35] R. Doc. 21-6 at 7.
[36] R. Doc. 21-3 at 1.

It was only some time after the accident that plaintiff realized, "in retrospect," that he slipped on grease, and that he must have stepped in grease somewhere on the deck.[37] But this is pure speculation on plaintiff's part. Such speculation does not suffice to raise a genuine dispute as to causation. *See Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) ("A non-movant will not avoid summary judgment by presenting 'speculation, improbable inferences, or unsubstantiated assertions.'" (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)).

Thus, there is no evidence connecting plaintiff's slip and fall to the presence of grease on the M/V CAPE KNOX's deck. In the absence of such evidence, it is not plausible to infer that the grease actually caused the accident. And even if a reasonable juror could draw this inference, the Court as factfinder could not possibly draw this inference based on the evidence presented. *See Johnson*, 597 F.3d at 676. Thus, the United States is entitled summary judgment on plaintiff's negligence claim.

---

[37] R. Doc. 25-1 at 10.

## B. Unseaworthiness

Plaintiff also asserts a cause of action for unseaworthiness under general maritime law.[38] "A shipowner has an absolute nondelegable duty to provide a seaworthy vessel." *Brister v. A.W.I., Inc.*, 946 F.2d 350, 355 (5th Cir. 1991). To recover under an unseaworthiness theory, "the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001). "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* The standard of causation for an unseaworthiness claim is "more demanding" than the Jones Act standard, "and requires proof of proximate cause." *Chisholm v. Sabine Towing & Transp. Co., Inc.*, 679 F.2d 60, 62 (5th Cir. 1982). To establish proximate cause, "a plaintiff must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Brister*, 946 F.2d at 355 (quoting *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988)).

---

[38] R. Doc. 1 at 3.

A slippery surface may render a vessel unseaworthy. *See, e.g.*, *Davis v. Hill Eng'g, Inc.*, 549 F.2d 314, 330 (5th Cir. 1977) (affirming district court's finding that "slippery condition rendered the deck unreasonably safe for its intended use"), *overruled on other grounds by Gautreaux*, 107 F.3d 331; *Levine v. Zapata Protein (USA), Inc.*, 961 F. Supp. 942, 945 (E.D. La. 1996) (finding that vessel was unseaworthy because "the stairs were too steep and the threads of the steps were slippery due to their worn condition and lack of a skid-proof surface"); *Courville v. Cardinal Wireline Specialists, Inc.*, 775 F. Supp. 929, 936 (W.D. La. 1991) (finding that vessel was "unseaworthy because of the absence of non-skid tape or some other appropriate skid [resistant] surface on the steep steps between the galley and the wheelhouse"). But, as explained earlier, plaintiff's testimony fails to raise a genuine dispute as to whether the grease on the decks played any part—let alone a substantial part—in causing plaintiff's injury. *See Brister*, 946 F.2d at 355. Thus, the United States is entitled summary judgment on plaintiff's unseaworthiness claim.

### C.  Maintenance and Cure

Finally, plaintiff seeks maintenance and cure.[39] Plaintiff received maintenance and cure in 2015 and 2016 for his arm injury. But he argues

---

[39]  *Id.* at 3-4.

that he is entitled to additional benefits because he continues to suffer from lower back pain as a result of the accident, and continues to be treated for this pain.

Seamen have a right to maintenance and cure for injuries that they suffer in the course of their service on a vessel, regardless of whether the shipowner was at fault or the vessel was unseaworthy. *See O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 41-42 (1943). "Maintenance" is the right of a seaman to food and lodging if he becomes injured during the course of fulfilling his duties to the ship. *See Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 413 (2009). "Cure" is the right to necessary medical services. *Id.* Before a plaintiff can recover maintenance and cure, he bears the burden of proving the following facts: (a) his engagement as a seaman; (b) that his injury occurred, was aggravated, or manifested itself while in the ship's service; (c) the wages to which he may be entitled; and (d) the expenditures or liability incurred by him for treatment, board, and lodging. 2 *The Law of Seamen* § 26:76; *see also Foster v. Brian's Transp. Serv.*, 1993 WL 114528, at *2 (E.D. La. 1993).

Maintenance and cure may be awarded "even where the seaman has suffered from an illness pre-existing his employment." *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968). But as a "general

principle," the benefits "will be denied where he knowingly or fraudulently conceals his illness from the shipowner." *Id.*; *see also Bodden v. Prof'l Divers of New Orleans, Inc.*, 2001 WL 1223589, at *2 (E.D. La. 2001) (discussing *McCorpen* defense). Specifically, if the shipowner requires a prospective seaman to undergo a pre-hiring medical evaluation, and the seaman either intentionally misrepresents or conceals material medical facts, then the seaman is not entitled to an award of maintenance and cure. *See McCorpen*, 396 F.2d at 549. For a shipowner or employer to rely on the *McCorpen* defense to deny a seaman's maintenance and cure claim, the employer must establish that: (1) the seaman intentionally misrepresented or concealed medical facts; (2) the misrepresented or concealed facts were material to the employer's hiring decision; and (3) there exists a causal link between the pre-existing disability that was concealed and the disability suffered during the voyage. *Id.*; *see also Brown v. Parker Offshore Drilling*, 410 F.3d 166, 171 (5th Cir. 2005) (finding *McCorpen* defense established).

In arguing that it is not obligated to pay further maintenance and cure to plaintiff, the United States asserts the *McCorpen* defense. The United States points to general physical forms filled out by plaintiff in connection with two physicals: one dated May 10, 2013, and the other dated November

3, 2014.[40] The forms each included several questionnaires. These questionnaires posed questions about whether plaintiff had ever experienced frequent backaches, back injury, recurrent back pain, or herniated discs. Plaintiff answered "no" to all such questions in both general physical forms. On the first page of each of the general physical forms, plaintiff's signature appears after the following certification:

> I certify that the foregoing statements are true to the best of my knowledge and belief. I understand that leaving out or misrepresenting facts called for above may be the cause for refusal of employment or separation from the company. I hereby grant permission to the examining physician to disclose any and all information herein or hereafter furnished by me to the Company as may be deemed necessary.[41]

The record indicates that plaintiff's answers to the questionnaires were not true. Plaintiff testified in his deposition that he experienced recurrent lower back pain and herniated disks well before 2013.[42] Plaintiff's "[f]ailure to disclose medical information in a[] . . . questionnaire that is obviously designed to elicit such information . . . satisfies the 'intentional concealment' requirement." *Brown*, 410 F.3d at 174 (citation omitted).

---

[40] R. Docs. 28-2, 28-3.
[41] R. Doc. 28-2 at 1; R. Doc. 28-3 at 1. Although the May 2013 form lists plaintiff's company as "MEBA"—presumably his union, the Marine Engineers' Beneficial Association—the November 2014 form lists it as Keystone.
[42] R. Doc. 28-4 at 3.

16

Moreover, there is a clear causal link between plaintiff's undisclosed injuries and his present lower back pain. Dr. John Vu, one of plaintiff's treating physicians, testified that MRIs performed in 2009 and 2014 revealed a progressive loss of height between the L5-S1 disks in plaintiff's lumbar spine.[43] Similarly, Dr. Voorhies testified to the same progressive loss of height between the same disks between 2014 and 2018.[44] Because plaintiff's "injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury" is established. *Id.* at 176.

Finally, the evidence establishes that plaintiff's medical history was material to his employer's hiring decision. To satisfy the materiality prong, the United States must show that plaintiff was hired based in part on his nondisclosure or intentional misrepresentations. *Id.* at 171. "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." *Id.* at 175; *see also McCorpen*, 396 F.2d at 549 ("[W]here the shipowner requires a seaman to submit to a pre-hiring medical examination or

---

[43] R. Doc. 28-5 at 3-4.
[44] R. Doc. 28-6 at 2.

interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure."). The United States contends, and plaintiff does not dispute, that plaintiff's employment was contingent on plaintiff's medical examinations and the questionnaires included therein. Indeed, plaintiff certified on the general physical forms that "leaving out or misrepresenting facts . . . may be the cause for *refusal of employment or separation from the company*."[45] Moreover, the questions about back pain were "rationally related to [plaintiff's] physical ability to perform his job duties." *Brown*, 410 F.3d at 175. The Fifth Circuit has noted that a seaman's "history of back injuries is the exact type of information sought by employers." *Id.* Indeed, plaintiff reported himself unfit for duty in August 2015 partly because of his back condition.[46] This evidence satisfies the materiality prong. Therefore, the United States has established the *McCorpen* defense, and it is entitled summary judgment on plaintiff's claim for maintenance and cure.

---

[45] R. Doc. 28-2 at 1; R. Doc. 28-3 at 1.
[46] R. Doc. 25-1 at 12.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __1st__ day of June, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE